# O'Rorke *v.* Geary, Appellant.

*Contract—Principal and agent—Parties.*

In an action for money alleged to be due on a contract for building a bridge, it appeared that the parties to the contract were described as fol-lows : "D. F. O'Rorke, of Altoona, Pennsylvania, party of the first part, and D. J. Geary, for a bridge company to be organized and incorporated, party of the second part." The contract recited that the party of the sec-ond part " desires to build across the Allegheny river and in accordance with specifications and plans . . . . heretofore submitted to the party of the

first part by the party of the second part." An estimate was to he made on a certain day, and seventy-five per cent was to be paid monthly on the estimate "by the party of the second part." The contract concluded as follows: "In witness whereof we have hereunto set our hands and seals," etc., but was signed only by plaintiff and defendant without any seal or scroll. *Held* that Geary was personally liable on the contract.

Argued Oct. 29, 1903. Appeal, No. 90, Oct. T., 1903, by defendant, from order of C. P. No. 3, Allegheny County, Nov. T., 1902, No. 411, making absolute rule for judgment for want of a sufficient affidavit of defense in case of D. F. O'Rorke v. D. J. Geary. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit to recover the amount alleged to be due on a contract for building a bridge.

Rule for judgment for want of a sufficient affidavit of defense. McCLUNG, J., filed the following opinion :

This suit is upon a written agreement, and the main defense is that the defendant did not, in executing the contract, act for himself, but for a corporation to be formed, and that the corporation, and not D. J. Geary, is now liable to the plaintiff for what is due him on said contract.

The contract was executed on June 19, 1901. It was between plaintiff, as party of the first part, and "D. J. Geary for a bridge company to be organized and incorporated," as party of the second part. It was for the building of a bridge, which it recites the party of the second part "desires to build across the Allegheny river, and in accordance with specifications and plans . . . . heretofore submitted to the party of the first part by the party of the second part."

The work was to be subject to the inspection and approval of P. H. Melvin, his decision to be binding, etc.

An estimate was to be made August 1, 1901, and seventy-five per cent paid "by the party of the second part" and monthly thereafter. Work was to be commenced within ten days and completed on or before October 1, 1901. The agreement concludes, "In witness whereof we have hereunto set our hands and seals," etc., but is signed simply by plaintiff and defendant without any seal or scroll.

We have examined a great number of authorities which touch more or less closely upon the point involved. We do not propose to review them nor even to cite them, but will simply suggest a few principles which we think are in accord with all of these cases, and which fully warrant the interpretation which we put upon the contract, with respect to who is the responsible party of the second part.

Justice Swayne says, in Whitney v. Wyman, 101 U. S. 392, that there is a broad distinction in this case between instruments under seal and those not under seal. That in the former case the contract must be in the name of the principal and must purport to be his deed and not the deed of the agent covenanting for him; while in the latter case it is always one of intent, and the court being untrammeled by other considerations is bound to give it effect. This probably means that when the instrument is sealed the intent as to whose contract it is, is shown by the seal affixed, and thus is explained the great significance given to the seal in some of the old cases. This, however, does not affect the present case, as the instrument is not under seal,—at all events it does not affect our conclusion, as there is nowhere a suggestion that there ever was any intention of attaching to it the seal of the corporation.

We have then simply the question as to whether or not Geary bound himself or the company to be incorporated for the building of this bridge.

When a party is acting for a proposed corporation, he cannot, of course, bind it by anything he does, at the time, but he may (1) take on its behalf an offer from the other, which, being accepted after the formation of the company, becomes a contract; (2) make a contract at the time binding himself, with the stipulation or understanding, that if a company is formed it will take his place and that then he shall be relieved of responsibility, or (3) bind himself personally without more and look to the proposed company, when formed, for indemnity.

It seems to us that Geary in this case comes within No. 3.

The writing is not a mere naked offer to be submitted to the corporation not yet either organized or incorporated; because work was certainly to be begun and probably completed before it was possible that this corporation should come into existence. Geary certainly intended himself to pay the seventy-five per

cent monthly on the estimates. The affidavit of defense says that the company was incorporated before the bridge was completed, but it does not say that it was incorporated before October 1, 1901, when, by the contract, it was to be completed. It is just as clear that there is no provision for a substitution of responsibility.

The corporation might be accepted by O'Rorke and by novation become the party of the second part, or it might, under certain circumstances, become liable to plaintiff without releasing Geary, but there is nothing in the writing which authorizes Geary to substitute at any time another for himself as the responsible party.

The bridge company is not mentioned in the contract save when the party of the second part is described as " D. J. Geary for the bridge company to be formed," etc.

In his opinion in Hopkins v. Mehaffy, 11 S. & R. 126, Judge GIBSON calls attention to the difference between the covenant of an agent who describes himself as contracting for his principal, and the covenant of a principal through the means and by the instrumentality of an agent. We have here no covenant of a principal through an agent, as is shown by the language used, and for the further reason that the alleged principal was not then in existence.

In many of the discussions of this subject, " ratification of the act of an unauthorized agent," and " the responsibility of an undisclosed principal " are spoken of. These references serve in some cases as illustrations of the nature of the responsibility incurred, but when applied loosely confuse rather than enlighten.

We have no question of ratification, because that implies the existence at the time of a principal who might have given the agent authority. Nor do we have any such thing as an undisclosed principal. There was nothing undisclosed. We have a case that is sui generis.

The bridge was for a company that did not then exist, but was to be afterwards organized and incorporated.

O'Rorke might have built the bridge and taken the chances of the company paying him, or he might have made a contract by which Geary was to be liable until the company was formed, and then the company was to step into his shoes and relieve him,

Neither of these things was done.    A third course was adopted whereby Geary became liable personally on the contract,—he taking the chances of the incorporations of the company and of its indemnifying him.    He is liable to the plaintiff in the present action.

There are some special defenses as to various items, many of which, it must be admitted, are set out with little definiteness. Under the circumstances of the case, however, we have concluded that we should treat these averments as sufficient to prevent judgment and enter it only for the sum as to which the only defense is the allegation that the bridge company and not the present defendant is the party of the second part to the the written contract.    This judgment will be entered with leave to proceed as to the disputed items.    An order should be drawn showing just what is covered by the judgment now entered.

The statement of the matter in plaintiff's brief seems to be correct except that the amount should be further reduced by $218.25 for labor, which the affidavit of defense avers plaintiff agreed to credit on the amount due under the written contract.

*Error assigned* was the order of the court.

*A. Leo. Weil,* with him *Charles M. Thorp,* for appellant.

*Watson B. Adair,* with him *William M. Hall, Jr.,* for appellee.

PER CURIAM, November 9, 1903 :

On a rule for judgment for want of a sufficient affidavit of defense the court below entered judgment for plaintiff (see opinion filed) for the larger part of his claim.    That opinion sufficiently vindicates the judgment.

The assignments of error are overruled and the judgment affirmed for the reasons given in the opinion of the court below.